IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DESTEPHANO FLYNN | ) | |
| | ) | |
| Petitioner, | ) | No. 25 C 9414 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| MCKENNA WENZEL, Warden, | ) | |
| Danville Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Destephano Flynn ("petitioner"), an Illinois prisoner, petitions for a writ of habeas corpus under 28 U.S.C. § 2254. Respondent Mckenna Wenzel, warden of the Danville Correctional Center where petitioner is held, answered the petition. For the reasons below, the petition (Docs. 1, 7) is denied, and no certificate of appealability shall issue.

## **BACKGROUND**[1]

On October 4, 2021, there was a shooting during a dice game in Tilton Park at Lake Street and Kostner Avenue in Chicago. Jermaine Collins was shot several times and died. Billy Taylor was shot while fleeing the scene and survived the attack. Petitioner was arrested on August 10, 2007, and charged with the first-degree murder of Collins and the attempted first-degree murder of Taylor, aggravated battery with a firearm, and aggravated discharge of a firearm.

---

[1] When addressing a § 2254 petition, federal courts take "facts from the Illinois Appellate Court's opinions because they are presumptively correct on habeas review." Hartsfield v. Dorethy, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citing 28 U.S.C. 2254(e)(1)). The facts below come from the Illinois Appellate Court's order affirming the trial court's dismissal petitioner's postconviction petition. See People v. Flynn, 2025 IL App (1st) 231047-U.

1

Petitioner was questioned after the arrest. During the questioning, petitioner made a videotaped statement. This statement was published to the jury during his trial in October 2010. According to petitioner's statement, he had been at Taylor Park hours before the shooting. He left the park and eventually went home and slept. Later the same night, two of petitioner's co-defendants came to his house and woke him up. They told petitioner that they wanted guns because Collins "got to go," which petitioner understood to mean that Collins had to die. Petitioner kept guns hidden in a hollowed-out teddy bear. He put a .22-caliber revolver in his pocket and gave his codefendants firearms of different calibers.

According to petitioner's statement, his co-defendants left the house before he did. Petitioner took his time putting on his shoes before following them back to the park in hopes that the shooting would be over by the time he got there. When he arrived at the park, he saw one of his co-defendants shoot Collins. Petitioner admitted firing his gun once or twice in Collins's direction but claimed that he was not trying to hit Collins and that he did not know whether he actually hit Collins. Furthermore, petitioner stated that he saw codefendants shoot at Taylor. Petitioner also admitted that he saw one of his codefendants go to Collins and shoot him in the head at close range.

The jury found petitioner guilty of first-degree murder and attempted first degree murder and for personally discharging a firearm during each crime. Petitioner was sentenced to a total of 66 years in prison, which consisted of the consecutive sentences of 20 years for the murder plus 20 years for personally discharging a firearm during that murder, and 6 years for the Class X offense of attempted murder plus 20 years for personally discharging a firearm during that attempted murder.

Petitioner appealed to the Illinois Appellate Court, raising two claims: (1) the evidence was insufficient to prove him guilty of attempted murder under an accountability theory; and (2) the trial court erred by imposing the firearm enhancements. The Illinois Appellate Court affirmed petitioner's conviction and sentence. Petitioner then renewed those claims in a petition for leave to appeal to the Illinois Supreme Court, which was denied.

Petitioner also sought post-conviction review. Petitioner filed a pro se petition in the Circuit Court of Cook County (counsel was eventually appointed) raising three claims: (1) trial counsel was ineffective for not interviewing and presenting testimony from a witness named Cedric Binion; (2) counsel was ineffective because he did not move to suppress petitioner's recorded statement to the police under Gerstein v. Pugh, 420 U.S. 103 (1975), because more than 48 hours passed between his arrest and the determination of probable cause; and (3) petitioner's warrantless arrest violated the Illinois Constitution because it was made pursuant to an investigative alert. The Circuit Court ultimately dismissed petitioner's post-conviction petition, and petitioner appealed to the Illinois Appellate Court. The Illinois Appellate Court affirmed. Finally, petitioner filed a petition for leave to appeal to Illinois Supreme Court, raising only his claim that counsel was ineffective for not investigating Binion and calling him to testify. The Illinois Supreme Court denied his petition.

**<u>DISCUSSION</u>**

Petitioner's habeas petition raises three claims for relief:

1. Trial counsel was ineffective for not investigating Cedric Binion and calling him as a witness;

2. Trial counsel was ineffective for not moving to suppress petitioner's post-arrest statement; and

3. Petitioner's warrantless arrest violated the Fourth Amendment.[2]

### A. Procedural Default (claims two and three)

Respondents contend that claims two and three are procedurally defaulted. According to respondents, petitioner failed to fairly present these claims through one full round of state court review. Respondents point out that petitioner did not present claims two and three before the Illinois Appellate Court or the Illinois Supreme Court on direct appeal, where he challenged the sufficiency of the evidence and the propriety of his sentence. In addition, respondents argue that petitioner did not present claims two and three through one complete round of state-court review on postconviction appeal.

The court agrees that claims two and three are procedurally defaulted. The procedural default doctrine "normally will preclude a federal court from reaching the merits of a habeas claim when…the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred." Perruquet v. Briley, 390 F.3d 505, 514 (7th Cir. 2004). To fulfill the requirement of fairly presenting a claim to the state courts, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). In Illinois, that means state prisoners must include their claim in a petition for leave to appeal ("PLA") to the Supreme Court of Illinois. See id. at 847.

---

[2] The court has altered the order in which the claims are presented for the sake of clarity.

Petitioner failed to fairly present claim two—that trial counsel was ineffective for not moving to suppress petitioner's post-arrest statement—to the Illinois courts. According to petitioner's habeas petition, he did not raise this issue on direct appeal but instead raised the claim in his post-conviction petition. But, as respondents correctly point out, petitioner's PLA includes only a single claim: ineffective assistance of counsel claim based on his trial counsel's failure to investigate Cedric Binion and call him as a witness. The PLA did not raise the ineffective assistance of counsel claim based on failure to move to suppress the petitioner's post-arrest statement. Consequently, this claim was not fairly presented to the Illinois state courts.

Claim three—that petitioner's warrantless arrest violated the Fourth Amendment—was also not fairly presented to the Illinois state courts. According to the habeas petition, petitioner raised a similar claim in his post-conviction petition. In his post-conviction petition, petitioner argued that the warrantless arrest violated his right to freedom from unreasonable search and seizure under the Illinois Constitution.[3] But this claim suffers from the same deficiency as claim two, it was not raised in petitioner's PLA. Consequently, this claim was also not fairly presented to the Illinois courts.

Having found that petitioner failed to present claims two and three to the Illinois courts, the court also finds that "it is clear that" Illinois "courts would now hold the claim[s]

---

[3] Respondents argue that petitioner's claim under the Illinois Constitution is distinct from the claim petitioner raises here, a Fourth Amendment claim under the United States Constitution. Thus, according to respondents, petitioner never presented this claim to the Illinois courts. To determine whether a claim presented in a federal court is substantively the same as a claim presented to the state courts, the Seventh Circuit has analyzed the following factors: "(1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." Perruquet, 390 F. 3d at 519–20. The court doubts that it would agree with respondents on this point if it undertook a full analysis using these factors. Nevertheless, the court need not do so, because petitioner failed to present the claim through a full round of state court review.

5

procedurally barred." Perruquet 390 F.3d at 514. The Illinois Post Conviction Hearing Act "contemplates the filing of only one postconviction petition." People v. Ramey, 913 N.E.2d 670, 675 (Ill. App. 1st 2009). The Supreme Court of Illinois has held that "a defendant faces immense procedural default hurdles when bringing a successive postconviction petition." People v. Davis, 6 N.E.3d 709, 716 (Ill. 2016). In addition, the Illinois Supreme Court has held that "these hurdles are lowered in very limited circumstances, where fundamental fairness so requires." People v. Tenner, 794 N.E.2d 238, 245 (Ill. 2002), as modified on denial of reh'g (Mar. 31, 2003) (internal quotation omitted). Petitioner has not argued or otherwise made a showing that Illinois would permit his claim to surmount these immense hurdles to file a successive post-conviction petition. Consequently, the court finds that the Illinois courts would now hold claims two and three procedurally barred.

Because the court finds that petitioner failed to present claims two and three to the Illinois courts and Illinois courts would now hold those claims procedurally barred, this court will not reach the merits of claims two and three. See Perruquet, 390 F.3d at 514.

**B. Ineffective assistance of counsel (claim one)**

Petitioner successfully presented claim one through a complete round of state court review. Respondents do not dispute that the court should evaluate the merits of claim one. The substance of claim one is that petitioner's trial counsel provided ineffective assistance because he failed to interview Cedric Binion and call him as a witness. This court has reviewed an affidavit from Binion. Binion states that he would have been willing to testify to the innocence of petitioner. Binion states that he was a first-hand witness to the shooting, and that petitioner was not one of the shooters. Binion also states that he was never contacted by petitioner's trial

6

counsel. In addition, the court has reviewed multiple affidavits stating that petitioner's trial counsel was advised of the existence of Binion, Binion's location, and that Binion would testify to petitioner's innocence. Trial counsel did not investigate Binion or call him as a witness in petitioner's trial. Petitioner argues that this failure constitutes ineffective assistance of counsel.

Respondents do not contest the factual content of petitioner's claim. Instead, respondents argue that this claim was already adjudicated on the merits by Illinois courts, and the bar to relitigate such claims is extremely high. Because factual determinations are not at issue, respondents correctly argue that petitioner must show that the last reasoned state court decision addressing his claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1). The last reasoned state court decision addressing his claim was People v. Flynn, 2025 IL App (1st) 231047-U, appeal denied, 260 N.E.3d 96 (Ill. 2025).

The court finds that the Illinois Appellate Court's decision on claim one was not contrary to, or an unreasonable application of, the Strickland standard that governs ineffective assistance of counsel claims. See Strickland v. Washington, 466 U.S. 668, 687 (1984). The Illinois Appellate Court correctly stated that "a defendant must make (1) a substantial showing that counsel's performance was objectively unreasonable under prevailing professional norms and (2) a substantial showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." People v. Flynn, 2025 IL App (1st) 231047-U, ¶ 30,

In evaluating the first prong—a whether counsel's performance was reasonable under prevailing professional norms—the Illinois Appellate Court applied "the strong presumption that

the challenged conduct was the product of sound trial strategy." People v. Flynn, 2025 IL App at ¶ 33. This is almost verbatim the standard that the Supreme Court articulated in Strickland. See 466 U.S. at 689.

The Illinois Appellate Court reasoned that had Binion testified, his credibility would be subject to impeachment due to his prior convictions. At the time of petitioner's trial in 2010, Binion was serving a 30-month sentence for failing to register as a sex offender. In addition, the court noted that Binion had made a prior inconsistent statement during a police interview in February 2007. In this statement, Binion said he observed petitioner fire a handgun at an unknown individual. The court reasoned that the introduction of this prior inconsistent statement could have been damaging to the defense, as it would alert the jury to an additional identification of petitioner as a shooter.

The Illinois Appellate Court determined that "[a]n attorney is not ineffective for failing to investigate and call a witness" who was vulnerable to credibility impeachment and made a prior inconsistent statement inculpating petitioner. People v. Flynn, 2025 IL App at ¶ 36.

Even though the Illinois Appellate Court held that petitioner's ineffective assistance of counsel claim failed at the first prong, it also analyzed the second prong for good measure. The court held that petitioner had "not made a substantial showing of a reasonable likelihood that the result of his trial would have been different had Binion taken the stand and testified consistently with his affidavit." Id. at ¶ 37. In addition to the issues with Binion's credibility and prior inconsistent statement had he testified, the court noted the "strong evidence of defendant's participation in the shooting," which included "two eyewitnesses who identified defendant as a shooter" and his own confession. Id. at ¶ 37- 38.

8

This court finds that the Illinois Appellate Court's analysis did not involve an unreasonable application of Strickland. Petitioner failed to overcome the presumption that his trial counsel's failure to call Binion as a witness was the product of sound trial strategy. Petitioner also failed to demonstrate a reasonable likelihood that the result of his trial would have been different if Binion had taken the stand. The Supreme Court has held that § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents….[and] is a guard against extreme malfunctions in the state criminal justice systems." Harrington v. Richter, 562 U.S. 86, 102 (2011) (internal quotations omitted). The Illinois Appellate Court's decision on petitioner's ineffective assistance of counsel claim does not come close to clearing that exceedingly high bar. Instead, this court finds that the Illinois Appellate Court's analysis of the claim was quite reasonable.

## C.  Certificate of Appealability

The court will not issue a certificate of appealability ("COA"). COAs are governed by 28 U.S.C. § 2253 (c). Because the court has rejected claim one on the merits, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). The court finds that petitioner has not made this showing because his ineffective assistance of counsel claim fails on both prongs of the Strickland standard. Consequently, the court declines to issue a COA on claim one.

Because the court has rejected claims two and three on procedural grounds, the standard

governing the issuance of a COA for those claims is the following: "a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. <u>Slack</u>, 529 U.S. 484. Since both showings are part of § 2253 (c)'s threshold inquiry, a court may resolve the question on the basis of whichever issue is more apparent from the record. <u>See id.</u> Because this court did not reach the constitutional claims, and heeding the principle of constitutional avoidance, the court will first address the procedural issue. <u>See Ashwander v. TVA</u>, 297 U.S. 288, 346–47 (1936) (Brandeis, J., concurring).

The court recognizes that there is room for jurists of reason to debate whether "it is clear that" Illinois "courts would now hold [claims two and three] procedurally barred." <u>Perruquet</u> 390 F.3d at 514. It is unlikely but not impossible that Illinois courts could permit petitioner to file a successive post-conviction petition on those claims. But if Illinois courts would permit petitioner to file a successive post-conviction petition on claims two and three, then those claims would be unexhausted, because state remedies would remain available to petitioner. "Where state remedies remain available to a habeas petitioner who has not fairly presented his constitutional claim to the state courts, the exhaustion doctrine precludes a federal court from granting him relief on that claim." <u>Perruquet</u>, 390 F.3d at 514. Thus, no matter the outcome of this inquiry, the court could not grant petitioner relief on his claims.[4] For this reason the court declines to issue a COA on claims two and three.

---

[4] If petitioner had remaining state remedies available, then the court would not be able to reach claim one on the merits either, because "a district court must dismiss habeas petitions containing both unexhausted and exhausted claims." <u>Rose v. Lundy</u>, 455 U.S. 509, 522 (1982).

10

## CONCLUSION

For the above reasons, petitioner's habeas petition [1], [7] is denied, and the court declines to issue a certificate of appealability. The clerk is directed to enter judgment in favor of respondent and against petitioner.

ENTER:

Robert W. Gettleman
United States District Judge

DATE: February 27, 2026